Appeal No. 2026-1433

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

**ENTROPIC COMMUNICATIONS, LLC,**
***Appellant*,**

**v.**

**JOHN A. SQUIRES, Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office,**
***Intervenor*.**

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2024-00442.

# BRIEF FOR INTERVENOR

AUSTIN P. MAYRON
Deputy Solicitor

ROBERT J. MCMANUS
Senior IP Legal Counsel

KEVIN K. MCNISH
Senior Counsel for Patent Law and Litigation

OMAR F. AMIN
PETER J. SAWERT
Associate Solicitors

Office of the Solicitor
U.S. Patent and Trademark Office
Mail Stop 8, P.O. Box 1450
Alexandria, Virginia 22313
(571) 272-9035

September 11, 2026

*Attorneys for the Director of the U.S. Patent and Trademark Office*

**<u>Representative Claims 1 and 8 of U.S. Patent No. 9,825,826:</u>**

1. [1A] A method comprising:

[1B] performing by one or more circuits of a receiver coupled to a television and data service provider headend via a hybrid fiber coaxial (HFC) network:

> [1C] receiving, via said HFC network, a signal that carries a plurality of channels, wherein said channels comprise one or both of television channels and data channels;
>
> [1D] digitizing said received signal to generate a digitized signal;
>
> [1E] selecting a first portion of said digitized signal; selecting a second portion of said digitized signal;
>
> [1F] processing said selected second portion of said digitized signal to recover information carried in said plurality of channels;
>
> [1G] analyzing said selected first portion of said digitized signal to measure a characteristic of said received signal; and
>
> [1H] controlling the transmission of network management messages back to said headend based on said measured characteristic of said received signal, wherein said measured characteristic is different than said network management messages.

Appx83 (7:33-55) (bracketed limitation identifiers added).

8. The method of claim 1, wherein said characteristic is one of: *signal-to-noise ratio*, peak-to-average ratio, noise levels, bit error rate, and symbol error rate.

Appx83 (8:9-11) (emphasis added).

## TABLE OF CONTENTS


I. Statement of the Issues ........ 1

II. Statement of the Case ........ 2

A. The ’826 Patent ........ 3

B. Prior Art ........ 8

1. Kamieniecki ........ 8

2. Konstantinos ........ 9

C. IPR Proceeding ........ 10

III. Summary of the Argument ........ 13

IV. Argument ........ 14

A. Standard of Review ........ 14

B. The Board Correctly Concluded that Claims 1-4, 8-13, 17, and 18 Would Have Been Obvious ........ 16

1. The Board Properly Concluded that Representative Claim 1 Would Have Been Obvious ........ 17

a) The Board Properly Found that the Kamieniecki-Konstantinos Combination Teaches or At Least Suggests Limitation [1F] ........ 17

(1) The Board’s Decision Followed the Elements, Evidence, and Theories Identified in the Petition ........ 19

(2) Substantial Evidence Supports the Board’s Findings ........ 23

b) The Board Properly Found that the Kamieniecki-Konstantinos Combination Teaches Limitation [1G] ........ 25

2. The Board Properly Concluded that Representative Claim 8 Would Have Been Obvious ........ 29

a) Comcast Alleged, Entropic Did Not Dispute, and the Board Ultimately Concluded that the Kamieniecki-Konstantinos Combination Teaches All of Claim 8's Requirements.............30

b) Substantial Evidence Supports the Board's Findings Underlying its Obviousness Conclusion for Representative Claim 8 ..........................................................33

V. Conclusion.........................................................................................35

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arthrex, Inc. v. Smith & Nephew, Inc.*,
935 F.3d 1319 (Fed. Cir. 2019) ....................18

*In re Bayer Aktiengesellschaft*,
488 F.3d 960 (Fed. Cir. 2007) ....................15

*Best Med. Int'l, Inc. v. Elekta Inc.*,
46 F.4th 1346 (Fed. Cir. 2022) ....................15

*Bos. Sci. SciMed, Inc. v. Iancu*,
811 F. App'x 618 (Fed. Cir. 2020) ....................28

*Consol. Edison Co. v. NLRB*,
305 U.S. 197 (1938)....................15

*Corephotonics, Ltd. v. Apple Inc.*,
84 F.4th 990 (Fed. Cir. 2023) ....................16, 18

*Ericsson Inc. v. Intell. Ventures I LLC*,
901 F.3d 1374 (Fed. Cir. 2018) ....................16

*Ethanol Boosting Systems, LLC v. Ford Motor Co.*,
162 F.4th 1151 (Fed. Cir. 2025) ....................16

*In re Gartside*,
203 F.3d 1305 (Fed. Cir. 2000) ....................15

*Google LLC v. EcoFactor, Inc.*,
92 F.4th 1049 (Fed. Cir. 2024) ....................16

*Int'l Bus. Machines Corp. v. Zillow Grp., Inc.*,
160 F.4th 1360 (Fed. Cir. 2025) ....................16

*IOENGINE, LLC v. Ingenico Inc.*,
100 F.4th 1395 (Fed. Cir. 2024) ....................31

*In re Jolley*,
308 F.3d 1317 (Fed. Cir. 2002) ....................15

*In re Keller*,
642 F.2d 413 (CCPA 1981) ....................................................................30, 34

*Kennametal, Inc. v. Ingersoll Cutting Tool Co.*,
780 F.3d 1376 (Fed. Cir. 2015) ....................................................................15

*KSR Int'l Co. v. Teleflex Inc.*,
550 U.S. 398 (2007)....................................................................................18

*In re Merck & Co., Inc.*,
800 F.2d 1091 (Fed. Cir. 1986) ....................................................................18

*In re Mouttet*,
686 F.3d 1322 (Fed. Cir. 2012) ....................................................................15

*Netflix, Inc. v. DivX, LLC*,
84 F.4th 1371 (Fed. Cir. 2023) ....................................................................16

*Novo Nordisk A/S v. Caraco Pharm. Labs., Ltd.*,
719 F.3d 1346 (Fed. Cir. 2013) ....................................................................28

*Sage Prods., LLC v. Stewart*,
133 F.4th 1376 (Fed. Cir. 2025) ....................................................................16

*Samsung Electronics Co. v. Elm 3DS Innovations, LLC*,
925 F.3d 1373 (Fed. Cir. 2019) ................................................................22, 23

*Univ. of Strathclyde v. Clear-Vu Lighting LLC*,
17 F.4th 155 (Fed. Cir. 2021) ....................................................................15

*Yorkey v. Diab*,
601 F.3d 1279 (Fed. Cir. 2010) ....................................................................25

**Other Authorities**

37 C.F.R. §42.120(a)....................................................................................33

**STATEMENT OF RELATED CASES**

The Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office is unaware of any other appeal from the Patent Trial and Appeal Board of the United States Patent and Trademark Office in connection with IPR2024-00442 or U.S. Patent No. 9,825,826 that was previously before this Court or any other court other than the actions identified in Appellant's opening brief. *See* ECF No. 15 (Br.) at 1. The Director further notes that the '826 patent is the grandchild of the patent at issue in Appeal No. 26-1432, currently pending before this Court, and that this appeal involves some similar arguments by Entropic concerning overlapping prior art. The Director is not aware of any other cases that are pending in this or any other court that will directly affect, or directly be affected by, the Court's decision in this appeal.

## I. STATEMENT OF THE ISSUES

Entropic appeals from the Board's decisions concluding that claims 1-4, 8-13, 17, and 18 of its '826 patent would have been obvious to a person of ordinary skill at the time of the invention. The '826 patent relates to monitoring signal characteristics in cable networks to determine, for example, whether the quality of certain channel(s) at a user's home is acceptable. Representative independent claim 1 recites processing a portion of a received signal to recover information, e.g., so that the user can view television content (limitation [1F]), analyzing another portion of the signal to measure a "characteristic" (limitation [1G]), and controlling the transmission of network management messages back to the transmitter (termed the "headend") based on that characteristic (limitation [1H]). Representative dependent claim 8 limits the "characteristic" of limitations [1G] and [1H] to one of an enumerated list, including "signal-to-noise ratio."

Kamieniecki discloses a set-top box that outputs television programming for viewing by an end user, measures the quality of the received signal, and transmits that signal quality information to the headend. Konstantinos discloses a multi-channel receiver including a multi-channel selector, which enables simultaneous tuning to several channels (i.e., different portions of the received signal). The Board concluded, among other things, that Comcast showed that the combination of Kamieniecki and Konstantinos renders claim 1 obvious. After initially

concluding that Comcast did not carry its burden on claim 8, the Board granted Comcast's Rehearing Request because it overlooked Comcast's contention that Konstantinos's disclosure of "Signal-to-Noise" analysis teaches the claimed "signal-to-noise ratio." On appeal, Entropic argues that the Board procedurally erred in allegedly departing from the Petition as to its findings for limitations [1F] and [1G], and in allegedly failing to address the interrelationship between claim 8's limitation and limitation [1H].

The issues on appeal are:

1. Whether the Board properly concluded that representative claim 1 would have been obvious over Kamieniecki and Konstantinos, and, in particular, whether the Board's findings that the Kamieniecki-Konstantinos combination teaches or suggests limitations [1F] and [1G] are supported by substantial evidence.

2. Whether the Board properly found that the Kamieniecki-Konstantinos combination teaches or suggests all of representative claim 8's requirements.

For the reasons set forth below, this Court should affirm.

## II. Statement of the Case

This appeal arises from a petition for inter partes review filed by Comcast Communications, LLC challenging claims 1-18 of the '826 patent, which is assigned to Entropic Communications, LLC. Appx2. After issuing a Final Written Decision and then granting, in part, Comcast's request to rehear that Decision, the

Board concluded that claims 1, 2, 4, 8-11, 13, 17, and 18 would have been obvious to a person of ordinary skill at the time of the invention over Kamieniecki and Konstantinos, and that claims 3 and 12 would have been obvious over Kamieniecki, Konstantinos, and Sadja. Appx68.[1]

Entropic timely appealed, and Comcast thereafter withdrew as a party. Appx588-592; ECF Nos. 2, 3. The Director intervened to defend the Board's decision on the merits. ECF No. 9.

### A. The '826 Patent

The '826 patent states that, in a cable television system, there are certain "specifications" relating to, e.g., "signal levels" of channels, "that would affect the performance of the receiver." Appx80 (1:46-50). If these "parameters deviate outside acceptable bounds, the user may experience unacceptable performance." *Id.* (1:50-52). According to the '826 patent, conventional ways of monitoring such parameters were "too costly and impractical for use in customer-premises equipment (CPE)."[2] *Id.* (1:53-55).

[1] "Kamieniecki" refers to U.S. Patent Appl. Publ. No. 2005/0114879 (Appx1102-1107); "Konstantinos" refers to U.S. Patent Appl. Publ. No. 2010/0120386 (Appx1108-1129); and "Sadja" refers to U.S. Patent Appl. Publ. No. 2005/0183130 (Appx1271-1289). Only Kamieniecki and Konstantinos are relevant to the issues that Entropic raises on appeal.

[2] In the '826 patent, CPE refers to equipment at the end user's premises (e.g., home or business) and can include, for example, a cable modem connected to a customer computer. Appx80-81 (2:66-3:3); Appx2889. In the art more broadly, CPE

Fig. 1B of the ’826 patent (below) shows a “receiver operable to perform spectrum monitoring.” Appx81 (3:16-18). As shown in Fig. 1B, receiver circuit 100 includes an RF receive front-end module 158, a channelizer module 102, a data processing module 156, and a monitoring module 154. *Id.* (3:18-21).




’826 Patent Fig. 1B

Appx74.

RF receive front-end module 158 “process[es] a received RF signal S to generate a digital signal D.” Appx81 (3:22-23). Channelizer module 102 “select[s] J+1 bands (represented as $C_1$-$C_{J+1}$) of the signal S” and outputs the

---

sometimes also refers to what the ’826 patent labels “end systems,” such as computers and televisions connected to the cable modem. Appx80 (2:47-52); Appx1561-1562; Appx1152 (8:21-23).

selected bands to data processing module 156 and/or monitoring module 154. *Id.* (3:32-33). Data processing module 156 "process[es] the bands $C_1$-$C_J$ conveyed to it by the channelizer 102 to recover data present in one or more television channels" included in bands of signal S. *Id.* (4:6-9). For example, data processing module 156 may output processed data as "MPEG transport stream packets" to end systems 126 via an interface, e.g., an HDMI interface. *Id.* (4:11-15).[3]

Monitoring module 154 "analyze[s] the band $C_{J+1}$ that it receives from the channelizer 102 to measure/determine characteristics," e.g., "signal to noise ratio," which may help assess "characteristics of the channel over which the signal was received," "characteristics of the transmitter that sent the signal," and/or other characteristics that may "otherwise be pertinent to [the] performance of the communication system." Appx81 (3:45-57). Monitoring module 154 also generates one or more control signals 160, which "may control the transmission of network management/maintenance messages." *Id.* (3:60-64). Such messages may include "network status updates indicating whether one or more communication parameters" of received channel(s) "are outside acceptable bounds." *Id.* (3:63-66).

[3] "MPEG" refers to the "Moving Picture Experts Group," which provides encoding standards for audio and video content. Appx748 (¶163) (Declaration of Comcast's expert, Mr. Lett). MPEG-2 is one such standard in which a "transport stream" is used to convey compressed audio and video data in a digital format. Appx2123-2124 (31:16-32:5) (Deposition transcript of Entropic's expert, Dr. Russ).

On appeal, Entropic challenges the Board's conclusions with respect to independent claims 1 and 10 and dependent claims 8 and 17. *See, e.g.*, Br. 5. Independent claim 1 and dependent claim 8 are provided below. Independent claim 10 is a system claim that corresponds to claim 1 in all respects relevant to this appeal, including by reciting limitations corresponding to limitations [1F], [1G], and [1H]. Appx83 (8:28-39). Claim 17 depends from claim 10 but is otherwise identical to dependent claim 8. *Id.* (8:53-55). Thus, independent claim 1 and dependent claim 8 are representative with respect to the issues Entropic raises on appeal.

> [1A] 1. A method comprising:
>
> [1B] performing by one or more circuits of a receiver coupled to a television and data service provider headend via a hybrid fiber coaxial (HFC) network:
>
>> [1C] receiving, via said HFC network, a signal that carries a plurality of channels, wherein said channels comprise one or both of television channels and data channels;
>>
>> [1D] digitizing said received signal to generate a digitized signal;
>>
>> [1E] selecting a first portion of said digitized signal; selecting a second portion of said digitized signal;
>>
>> [1F] processing said selected second portion of said digitized signal to recover information carried in said plurality of channels;
>>
>> [1G] analyzing said selected first portion of said digitized signal to measure a characteristic of said received signal; and
>>
>> [1H] controlling the transmission of network management messages back to said headend based on said measured characteristic of said received signal, wherein said measured characteristic is different than said network management messages.

Appx83 (7:33-55) (bracketed limitation identifiers added).

> 8. The method of claim 1, wherein said characteristic is one of: *signal-to-noise ratio*, peak-to-average ratio, noise levels, bit error rate, and symbol error rate.

Appx83 (8:9-11) (emphasis added).

### B. Prior Art

#### 1. Kamieniecki

Kamieniecki describes "monitoring the quality of signals on a cable television network." Appx1104 (¶1). Fig. 1 of Kamieniecki (below) shows a cable system that includes a cable service provider headend 102 and a network of cables 104. *Id.* (¶13). Headend 102 is where the cable system receives "services" like television programming and assigns that programming to channels. *Id.* Cables 104 are coupled to users' set-top boxes (STBs) 110. *Id.* As shown in Fig. 1, network of cables 104 includes downstream and upstream paths, which can communicate content for viewing by a user and information from the STB to the headend, respectively. *Id.*

FIG. 1




Appx1103.

STB 110 includes in-band (IB) tuner 112 for receiving content, e.g., in MPEG-2 format, and an out-of-band (OOB) tuner 114 for receiving instructions from the cable operator. Appx1104 (¶¶4, 13, 14). STB 110 also includes a

monitor 116, which "generat[es] information related to signal quality on the channels (either or both IB and OOB)." Appx1104-1105 (¶14). The signal quality information can include "channel absence/presence, error count and signal level estimates" and can be transmitted by STB 110 to headend 102. Appx1105 (¶¶14, 15). The signal quality information can be obtained on a channel-by-channel basis by sequentially tuning to each channel in the channel map. *See id.* (¶15).

**2. Konstantinos**

Konstantinos states that although "[c]urrent television receivers receive a single channel through a single tuner," "[t]he evolving market for data and programming services will demand that receivers have the capability of multi-channel tuning." Appx1119 (¶1). Konstantinos therefore discloses "a multi-channel receiver [that] uses an analog to digital converter (ADC) and a high speed multi-band selector (MBS) to provide a selectable multi-channel output to an external device." Appx1121 (¶42). Fig. 2 of Konstantinos (below) illustrates a multi-channel receiver (MCR) 200.




FIG. 2

Appx1110.

MCR 200 includes a low-noise-amplifier and variable gain amplifier (LNA/VGA) 202, an ADC 204, and a multi-channel selector 206, which includes a multi-band selector 205 and channel selectors 207A-207N. Appx1121 (¶43). LNA/VGA 202 outputs a preconditioned RF input signal, such as a cable TV signal including multiple channels, to ADC 204. *Id.* ADC 204 digitizes this signal and outputs it to multi-band selector 205, which splits the received signal into L sub-bands. Appx1121-1122 (¶¶ 43-45). Channel selectors 207 each receive one of the L sub-bands, select one channel within it, and deliver an output stream, e.g., an MPEG stream. Appx1122 (¶46); Appx1127 (¶107).

### C. IPR Proceeding

The Board concluded that claims 1, 2, 4, 8-11, 13, 17, and 18 would have been obvious to a person of ordinary skill in the art at the time of the invention

based upon Kamieniecki and Konstantinos, and that claims 3 and 12 would have been obvious over Kamieniecki, Konstantinos, and Sadja. Appx68. As relevant to the issues Entropic raises on appeal, (1) the Board's Final Written Decision found that the Kamieniecki-Konstantinos combination teaches or suggests the limitations of representative independent claim 1 (Appx25-36), and (2) the Board granted Comcast's request to rehear that Decision as to representative dependent claim 8 and found that the Kamieniecki-Konstantinos combination teaches the limitation recited therein and concluded that claim 8 would have been obvious (Appx64-65).

For claim 1, the Board noted that Entropic disputed only Comcast's showing as to limitations [1F] and [1G]. Appx25; *see* Appx136-146 (discussion in Comcast's Petition of claim 1). As to limitation [1F], the Board found that "MPEG decoders" would have been necessary for decoding streams described by Kamieniecki and Konstantinos (Appx31 (quoting Appx748 (¶163) (Lett Decl.)), and "would perform limitation [1F]" (Appx31). The Board found unpersuasive Entropic's counterarguments regarding "details concerning the location and various connections that would be needed between the output of the channel selector on one side [disclosed in Konstantinos] and a TV and monitor on the other side [disclosed in Kamieniecki]." Appx31 (citing Appx15-20). For limitation [1G], the Board found persuasive Comcast's contention that, in the proposed combination, Kamieniecki's monitor 116 "would receive for analysis one or more

digital output streams from Konstantinos's receiver 200." Appx32 (citing Appx144 (Petition)). The Board thus concluded that claim 1 would have been obvious, finding that Comcast "demonstrate[d] that each limitation of claim 1 is disclosed or suggested by the combination of Kamieniecki and Konstantinos." Appx36. The Board made similar findings and reached the same conclusion for claim 10. Appx36-40.

For claim 8 and its corresponding claim 17, the Board acknowledged in the Final Written Decision Comcast's contentions that "Konstantinos monitors bit-error-rate and signal-to-noise ratio, which requires measurement of noise levels" (Appx44 (citing Appx155) (Petition)) and that Comcast proposed incorporating those teachings into the teachings from Kamieniecki that it cited for limitation [1H]. *Id.* (citing Appx155-156 (Petition)). The Board found, however, that "Konstantinos's 'signal-to-noise level' has not been shown to be equivalent to the claimed 'noise levels' though it may be related." *Id.* Comcast sought rehearing of that finding, and upon further consideration, the Board agreed with Comcast that it "overlooked considering Konstantinos's 'Signal-to-Noise' in relation to claim 8's 'signal-to-noise ratio'" and found those contentions persuasive. Appx64 (citing Appx1127 (¶109) (Konstantinos); Appx581-582 (Rehearing Request)). The Board therefore concluded that claim 8 and its corresponding claim 17 would have been "obvious over the combination of Kamieniecki and Konstantinos." Appx65.

## III. Summary of the Argument

Substantial evidence supports the Board's findings underlying its conclusions that representative claims 1 and 8 would have been obvious over Kamieniecki and Konstantinos. Entropic's claims of procedural error are unsupported in the record and should be rejected.

For representative claim 1, Entropic argues that the Board impermissibly departed from the Petition. Yet the Board's findings that the Kamieniecki-Konstantinos combination teaches or suggests limitations [1F] and [1G] track Comcast's contentions in its Petition. The Board identified the same element that performs limitation [1F] as Comcast did (i.e., decoders) and based its finding on evidence that Comcast cited in the Petition. Nor did the Board markedly depart from the obviousness theory the Petition proposed—as Comcast alleged, the Board concluded that limitation [1F] would have been obvious over the combination. Whether viewed as a "physical substitution" (as Entropic alleges) or as "teachings-based" (as the Board correctly found), the combination includes decoders that perform the step recited in limitation [1F].

Substantial evidence further supports the Board's finding that the combination teaches limitation [1G] because Kamieniecki's monitor 116 would, in the combination, receive and analyze a digitized signal. Entropic's arguments that

the Board's findings created a new argument are contradicted by the Petition, which states that "[m]onitor 116 analyzes the digital signal it receives." Appx144.

For representative claim 8, Entropic argues that the Board erred in failing to address the interrelationship between claim 8's limitation and claim 1's limitation [1H]. Yet Comcast's Petition addressed the full scope of what claim 8 requires, and Entropic chose not to challenge that showing during the IPR. Substantial evidence supports the Board's finding that the Kamieniecki-Konstantinos combination discloses claim 8's requirements, including the cited interrelationship. In the Final Written Decision, the Board acknowledged Comcast's allegations as to all of claim 8's requirements, noted that Entropic did not dispute Comcast's showing, and found Comcast's showing as to Konstantinos's teaching of "Signal-to-Noise" insufficient for one reason, namely that "Signal-to-Noise" was not shown to be equivalent to the claimed "noise levels." That finding was, as Entropic admits, erroneous because claim 8 also permits the "characteristic" to be "signal-to-noise ratio." The Board corrected that error in its Rehearing Decision and correctly concluded that Comcast carried its burden of showing that representative claim 8 would have been obvious.

## IV. ARGUMENT

### A. Standard of Review

This Court reviews "the Board's factual findings for substantial evidence

and its legal conclusions without deference." *Kennametal, Inc. v. Ingersoll Cutting Tool Co.*, 780 F.3d 1376, 1381 (Fed. Cir. 2015). Obviousness under 35 U.S.C. § 103 is a question of law based on underlying factual findings, which are reviewed for substantial evidence. *In re Gartside*, 203 F.3d 1305, 1316 (Fed. Cir. 2000). Here, Entropic challenges the Board's underlying findings regarding whether a prior art combination teaches or suggests certain claim limitations, which are reviewed for substantial evidence. *Univ. of Strathclyde v. Clear-Vu Lighting LLC*, 17 F.4th 155, 160 (Fed. Cir. 2021); *see id.* at 160-62 (considering whether substantial evidence supported the Board's finding that a prior art combination taught a claim limitation); *Best Med. Int'l, Inc. v. Elekta Inc.*, 46 F.4th 1346, 1356 (Fed. Cir. 2022) (affirming as supported by substantial evidence a Board finding regarding what a prior art reference "suggests"). Substantial evidence is "something less than the weight of the evidence but more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *In re Mouttet*, 686 F.3d 1322, 1331 (Fed. Cir. 2012) (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229-30 (1938)); *see also In re Bayer Aktiengesellschaft*, 488 F.3d 960, 970 (Fed. Cir. 2007) (citing *In re Jolley*, 308 F.3d 1317, 1329 (Fed. Cir. 2002)).

Entropic also challenges the Board's interpretation of Comcast's Petition and the Board's compliance with the Administrative Procedure Act (APA). This

Court reviews "the Board's judgments concerning what arguments are fairly presented in a petition and other pleadings for abuse of discretion." *Ethanol Boosting Systems, LLC v. Ford Motor Co.*, 162 F.4th 1151, 1164 (Fed. Cir. 2025) (quoting *Netflix, Inc. v. DivX, LLC*, 84 F.4th 1371, 1376 (Fed. Cir. 2023)); *see also Int'l Bus. Machines Corp. v. Zillow Grp., Inc.*, 160 F.4th 1360, 1365 (Fed. Cir. 2025); *Sage Prods., LLC v. Stewart*, 133 F.4th 1376, 1381 (Fed. Cir. 2025); *Corephotonics, Ltd. v. Apple Inc.*, 84 F.4th 990, 1002-03 (Fed. Cir. 2023). "The Board abuses its discretion when its decision '(1) is clearly unreasonable, arbitrary, or fanciful; (2) is based on an erroneous conclusion of law; (3) rests on clearly erroneous fact finding; or (4) involves a record that contains no evidence on which the Board could rationally base its decision.'" *Corephotonics*, 84 F.4th at 1003 (quoting *Ericsson Inc. v. Intell. Ventures I LLC*, 901 F.3d 1374, 1379 (Fed. Cir. 2018)). This Court "review[s] de novo the Board's compliance with the [APA]." *Google LLC v. EcoFactor, Inc.*, 92 F.4th 1049, 1054 (Fed. Cir. 2024).

### B. The Board Correctly Concluded that Claims 1-4, 8-13, 17, and 18 Would Have Been Obvious

Entropic argues that the Board procedurally erred in concluding that Comcast carried its burden of showing that representative claims 1 and 8 would have been obvious over Kamieniecki and Konstantinos. Entropic's arguments lack merit and should be rejected.

### 1. The Board Properly Concluded that Representative Claim 1 Would Have Been Obvious

Entropic asserts that the Board impermissibly departed from Comcast's Petition in two findings underlying its obviousness conclusion: (a) that the Kamieniecki-Konstantinos combination teaches or at least suggests limitation [1F] (Appx28-30; Br. 32-40); and (b) that the combination of Kamieniecki's monitor with Konstantinos's digitization teaches limitation [1G] (Appx32-35; Br. 40-43). Both challenged findings follow from the Petition, are supported by substantial evidence, and should be affirmed.

#### a) The Board Properly Found that the Kamieniecki-Konstantinos Combination Teaches or At Least Suggests Limitation [1F]

Limitation [1F] recites "processing said selected second portion of said digitized signal to recover information carried in said plurality of channels." Appx83 (7:45-47). In its Petition, Comcast alleged that Kamieniecki and Konstantinos both disclose decoders that perform this function. Appx143-144. Entropic responded that, because Comcast proposed a "physical substitution of elements" that lacked detail about where the decoders were located (Appx395), Comcast failed to show how the decoders would receive "said second portion of said digitized signal," as limitation [1F] requires. Appx394-397; *see* Appx496-497 (similar arguments in Sur-Reply).

The Board found Comcast's showing persuasive and rejected Entropic's arguments, finding that Entropic "quibble[d]" with the details regarding how decoders would be implemented, "but '[a] person of ordinary skill in the art is also a person of ordinary creativity, not an automaton.'" Appx31 (quoting *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 421 (2007)) (alteration in original). The Board added that Entropic "insist[ed] that [Comcast] shows a physical combination of the components of Kamieniecki and Konstantinos when the test is what the combination would have suggested to a person of ordinary skill in the art." Appx32 (citing *In re Merck & Co., Inc.*, 800 F.2d 1091, 1097 (Fed. Cir. 1986)).

On appeal, Entropic argues that the Board "exceed[ed] the scope of the challenges in the Petition." Br. 39. But as described below, those arguments lack merit because the Board's findings followed from the elements, evidence, and theories that Comcast identified in the Petition rather than markedly departing from them. *Corephotonics*, 84 F.4th at 1011-12 (holding that the Board did not impermissibly depart from the petition where the challenged finding "neither 'markedly . . . departed' from the 'evidence and theories presented by the petition or institution decision' nor 'unfair[ly] surprise[d]'" the patent owner) (quoting *Arthrex, Inc. v. Smith & Nephew, Inc.*, 935 F.3d 1319, 1328 (Fed. Cir. 2019)). Moreover, substantial evidence supports the Board's finding that the combination teaches or at least suggests limitation [1F].

#### *(1) The Board's Decision Followed the Elements, Evidence, and Theories Identified in the Petition*

The Board identified the same element as performing limitation [1F] that Comcast's Petition did, i.e., decoders, and based its findings on evidence cited in the Petition, i.e., paragraphs 4 and 13 of Kamieniecki, paragraphs 30, 42, 106-107, and 118-120 of Konstantinos, and paragraph 163 of Mr. Lett's opening Declaration. *Compare* Appx30-31, *with* Appx143-144. The Board's conclusion that limitation [1F] would have been obvious over the combination of those references tracks what the Petition presented. *Compare* Appx32 (Board finding that Comcast showed "that the combination of Kamieniecki and Konstantinos teaches or at least suggests limitation 1F") *with* Appx144 (Petition stating that "Kamieniecki-Konstantinos shows limitation [1F]") (citing Appx749 (¶166) (Mr. Lett opining that "it is my opinion that Kamieniecki-Konstantinos discloses" limitation [1F])).

Entropic argues that the Board erred by adopting what Entropic calls a "teachings-based" view of the combination instead of limiting the Petition to a "physical substitution" of Konstantinos's multi-channel receiver 200 for Kamieniecki's tuners 112 and 114. *See* Br. 33, 38. Entropic's argument should be rejected for two independent reasons.

*First*, were the Petition limited to a "physical substitution," the Board's findings still would support an obviousness conclusion under that theory because

the result of that "physical substitution" would include the decoders that the Board found perform limitation [1F]. The Petition alleged that the Kamieniecki-Konstantinos combination would yield improvements to Kamieniecki's STB. *See* Appx133-136. The Petition further made clear that any STB resulting from the Kamieniecki-Konstantinos combination would include decoders, alleging that "[t]elevision channels need to be processed so that their content can be recovered and viewed"; "Kamieniecki's STB obviously would have a decoder to process the MPEG-2 stream"; and "Konstantinos also describes channel and source decoders that are used to process a TV channel, such as an MPEG stream." Appx143 (citations omitted); *see* Appx2792 (160:21-161:8) (Mr. Lett testifying that the decoders would be located "after the multi-channel receiver"). Entropic acknowledged as much before the Board, stating that in a "physical substitution," "it would make sense that Konstantinos's multi-channel receiver would output to a decoder in Kamieniecki's STB." Appx395 (Patent Owner Response). Consistent with Comcast's and Entropic's contentions, the Board found that the Kamieniecki-Konstantinos combination would include decoders between the channel selectors of Konstantinos and the monitor of Kamieniecki. Appx31.

The modified figure that Entropic provides (Br. 34) is therefore not an accurate representation of the Kamieniecki-Konstantinos combination. It is sourced from Fig. 1 of Kamieniecki and Fig. 2 of Konstantinos, which are high-

level block diagrams that omit, among other things, the decoders that Comcast contended and the Board agreed perform limitation [1F]. *See* Appx1105 (¶14) (Fig. 1 of Kamieniecki omits details of a STB "which are well known to those skilled in the art"); Appx1104 (¶4) (Kamieniecki disclosing a STB that receives "MPEG-2 transport streams"); Appx2124-2125 (32:6-33:7) (Entropic's expert, Dr. Russ, testifying that an STB would need an ADC, demodulator, and a decoder to output an MPEG-2 transport stream). Entropic also alleges that Comcast did not object to the modified figure in its Reply. Br. 34. But Comcast argued that "[t]he decoder was simply a well-known detail omitted from the Kamieniecki figure, and [Entropic's] argument that it is not obvious where the decoder would be located is merely demanding that well-known detail" and that "an obviousness inquiry does not require actual physical substitution of elements, so [Entropic's] demand for a diagram is irrelevant." Appx431-432 (citations omitted).

*Second*, contrary to Entropic's allegations, the Board reasonably found that the Petition was not limited to a particular "physical combination" of Kamieniecki and Konstantinos. *See* Appx32. In attempting to limit the scope of the Petition, Entropic focuses on statements by Comcast and its expert that, in the combination, Konstantinos's multi-channel receiver "replaces" or is used "in place of" tuners in Kamieniecki. *See* Br. 33-36. But another passage of the Petition that describes the combination states "[a] POSITA had the skill to implement Konstantinos'

*teachings* with Kamieniecki because Kamieniecki's IB and OOB tuners use the same inputs (an RF signal) and same outputs (digital signal of the desired channel) as those of Konstantinos' multi-channel receiver and the POSITA would be familiar with the design of RF receivers." Appx135 (citing Appx743-744 (¶151) (Lett Decl.)) (emphasis added); *see* Appx133 (Petition describing the combination as being "a natural evolution of television technology specifically *taught* by Konstantinos") (emphasis added). Mr. Lett's Declaration filed with the Petition further stated that "[a] POSITA would have been motivated to apply Konstantinos' *teaching* of a multi-channel receiver to the monitoring system of Kamieniecki in order to enable simultaneous tuning and monitoring of larger numbers of channels." Appx742 (¶149) (emphasis added); *see* Appx677 (¶22) (describing Mr. Lett's understanding that a claim is unpatentable as obvious if "it would have been obvious to one of ordinary skill in the art to combine the teachings of the prior art to yield the patent claim"). Thus, consistent with what Entropic acknowledges is the proper test for obviousness (*see* Br. 37), the Board reasonably rejected Entropic's attempts to limit the scope of the Petition to a "physical combination."

Moreover, Entropic misplaces its reliance on this Court's decision in *Samsung Electronics Co. v. Elm 3DS Innovations, LLC*, 925 F.3d 1373 (Fed. Cir. 2019). *See* Br. 38. That decision does not relate to determinations regarding the scope of a petition or whether the Board impermissibly departed from a petition.

Rather, the Court considered whether substantial evidence supported the Board's finding that the petitioner there failed to show a reasonable expectation of success. 925 F.3d at 1383-84. The Board here found that Comcast showed a reasonable expectation of success, and Entropic has not challenged that finding on appeal. Appx20-25. In the passage of *Samsung* that Entropic focuses on, the Court rejected the petitioner's arguments that the Board "improperly required proof that unclaimed elements were combinable." 925 F.3d at 1382. The petitioner, the Court reasoned, was the one who made the feasibility of combining a certain fabrication process with a certain dielectric material a part of the case it presented in its petition, and the Board reasonably found that the petitioner failed to support that allegation. *Id.* at 1383. Here, the Board correctly found that Comcast supported the allegations it presented, i.e., that in the Kamieniecki-Konstantinos combination, decoders would perform limitation [1F].

#### ***(2) Substantial Evidence Supports the Board's Findings***

Entropic's arguments (Br. 39-41) that the Board's underlying findings lack substantial evidence support should also be rejected. As the Board found, the decoders would be located "between the output of the channel selector," which teaches the "second portion of said digitized signal" (Appx28 (citing Appx141-142 (Petition)), and "a TV and a monitor on the other side." Appx31. Indeed, as noted above, Entropic agreed that "it would make sense that Konstantinos's multi-

channel receiver would output to a decoder in Kamieniecki's STB." Appx395. Entropic also does not challenge the Board's finding that "any number of channel selectors and decoders may be implemented and that it would have been obvious to have enough so that viewing and monitoring can both occur." Appx19-20 (citing Appx139-143 (Petition); Appx426-427 (Reply)).

Entropic further conceded that "a decoder is designed to recover content on a signal." Appx496 (Sur-Reply). And the Board credited Mr. Lett's undisputed testimony that "'MPEG decoders were well-known to a POSITA, and would have been necessary for decoding the MPEG stream that Kamieniecki and Konstantinos describe.'" Appx31 (quoting Appx748-749 (¶163) (Lett Decl.)). Thus, the decoders would process "said selected portion of said digitized signal" (the output of the channel selectors) to "recover information carried in said plurality of channels," as limitation [1F] requires.

Entropic's substantial evidence argument turns on its allegation that Mr. Lett failed to explain exactly how the decoders would be arranged and connected in the combination. Br. 39-40 (citing Appx2795 (170:2-171:18) (Lett Dep. Tr.)). But the precise details of the connections to and from the decoders are not claimed, not difficult to accomplish for a skilled artisan (Appx31), and not germane to Comcast's obviousness case—as long as the decoders receive and process the output of the channel selectors as the Board found they did, they perform limitation

[1F]. Entropic's demands for detail stand in contrast to the disclosure of the '826 patent, which provides a high-level block diagram that conceptually illustrates the connections to and from data processing module 156 and generally describes its operation. Appx74 (Fig. 1B); Appx81 (4:6-18). Nor does Entropic challenge the Board's finding that Mr. Lett's testimony was credible despite his "understandable" refusal to provide "an off-the-cuff drawing during his deposition without careful consideration aforehand." Appx24-25; *see Yorkey v. Diab*, 601 F.3d 1279, 1284 (Fed. Cir. 2010) (this Court "defer[s] to the Board's findings concerning the credibility of expert witnesses").

#### b) The Board Properly Found that the Kamieniecki-Konstantinos Combination Teaches Limitation [1G]

Limitation [1G] requires "analyzing said selected first portion of said digitized signal." Appx83 (7:48-49). In finding this limitation taught by the combination, the Board credited the theory that it determined Comcast presented in its Petition, i.e., that "Kamieniecki's monitor would analyze digital signals." Appx34. Entropic argues that this finding "create[s] a new argument" because the Petition allegedly did not "state or suggest" that "Kamieniecki's monitor can analyze signals in the digital domain." Br. 40, 41. But the Petition contradicts Entropic's allegation. It states that "[m]onitor 116 [of Kamieniecki] *analyzes the digital signal* it receives . . . ." Appx144 (citing Appx1103-1105 (¶¶7, 14, 22 & Fig. 1) (Kamieniecki); Appx750 (¶168) (Lett Decl.)) (emphasis added).

Despite the Petition stating that Kamieniecki's monitor analyzes a digital signal, Entropic argues that what the Petition *meant* was Kamieniecki's monitor 116 would analyze "an analog waveform" onto which digital data had been encoded. Br. 41. In support, Entropic cites its own Patent Owner Response (Appx391-393), which is hardly persuasive evidence of what the Petition meant. Entropic also cites Mr. Lett's deposition testimony, but Mr. Lett testified about what Kamieniecki's *set-top box 110* receives from headend 102, not what *monitor 116* receives. Appx2766 (57:3-13). Thus, neither Entropic's Patent Owner Response nor the cited deposition testimony suggests that the Petition meant to present a theory in which Kamieniecki's monitor analyzes an analog waveform.

The rest of the record shows that the Petition presented a theory in which Kamieniecki's monitor analyzes a digital waveform. The Petition stated that in the proposed combination, Kamieniecki's monitor "would receive one or more digital output streams for analysis from Konstantinos' receiver 200," which itself includes ADC 204. Appx144 (citing Appx750-751 (¶170) (Lett Decl.)). Mr. Lett further explained that "[a] POSITA would know that there is an ADC in the STB" and that "[a] POSITA would not have limited Kamieniecki's monitoring, in the combination, to just monitoring analog signals, and would have known that it could analyze both analog and digital signals." Appx2090-2091 (¶18) (Lett reply Decl.). Entropic's expert, Dr. Russ, similarly acknowledged that an STB

outputting an MPEG-2 stream (as disclosed in Kamieniecki) would necessarily include analog-to-digital conversion. Appx2124 (32:6-17). Thus, even if the STB receives an analog waveform onto which a digital signal is encoded, that is no basis for reinterpreting the Petition's otherwise clear statement that the STB's monitor "analyzes the digital signals it receives." That is because in the proposed combination, the monitor receives the signal after it has been converted from the analog domain to the digital domain.

For similar reasons, Entropic's reliance on the Board's use of the word "implies" as evidence of departing from the Petition is misplaced. *See* Br. 41. What the Board stated was "implied" was "that Kamieniecki's monitor analyzes digitized signals operating in the digital domain." Appx34 (citing Appx144). But as described above, that is what Comcast contended in the Petition. Appx144.

Nor did the Board, as Entropic alleges, improperly shift the burden to Entropic in finding that Entropic did not show that modifying Kamieniecki's monitor 116 to operate in the digital domain would have been beyond the level of ordinary skill. Br. 42-43; Appx34. In its Petition, Comcast showed that Kamieniecki discloses monitor 116 as receiving signals and determining signal quality information without limiting the received signals to analog or digital ones. Appx144 (citing Appx1104-1105 (¶¶7, 14, 22) (Kamieniecki)). In his opening Declaration, Mr. Lett opined that an ordinarily skilled artisan "would have had the

skill to implement Konstantinos' teachings in the system of Kamieniecki" because, among other things, Kamieniecki's IB and OOB tuners—which transmit their outputs to monitor 116—"use the same inputs (an RF signal) and same outputs (digital signal of the desired channels) as those of Konstantinos' multichannel receiver chip." Appx743 (¶151). In his reply Declaration, Mr. Lett further testified regarding the details of how a skilled artisan could have implemented the monitor to receive and monitor digital signals in the digital domain. Appx2088-2091 (¶¶16-19).

With that substantial evidence before it, the Board reasonably found Entropic's responses unpersuasive because Entropic did not explain "why it would have been beyond a POSITA's skill to modify Kamieniecki's monitor to operate in the digital, rather than analog, domain." Appx34 (citations omitted); *see Bos. Sci. SciMed, Inc. v. Iancu*, 811 F. App'x 618, 626 (Fed. Cir. 2020) ("The PTAB did not shift the burden of proof to Boston Scientific by considering Boston Scientific's counterarguments.") (citing *Novo Nordisk A/S v. Caraco Pharm. Labs., Ltd.*, 719 F.3d 1346, 1353 (Fed. Cir. 2013)) (non-precedential).

* * *

Accordingly, contrary to Entropic's claims of procedural error, the Board properly found that the Kamieniecki-Konstantinos combination teaches limitations [1F] and [1G], and those findings are supported by substantial evidence.

### 2. The Board Properly Concluded that Representative Claim 8 Would Have Been Obvious

Claim 8 sets forth two requirements relevant to Entropic's arguments on appeal. First, limitation [1H], which dependent claim 8 incorporates from independent claim 1, requires "controlling the transmission of network management messages . . . based on said measured characteristic of said received signal." Appx83 (7:51-55). Second, claim 8 requires that "said characteristic" be "one of: signal-to-noise ratio, peak-to-average ratio, noise levels, bit error rate, and symbol error rate." *Id.* (8:9-11). The interrelationship between these requirements means that claim 8 is satisfied if the transmission of network management messages (disclosed by Kamieniecki's reporting of "channel absence/presence" information) is controlled based on a signal-to-noise ratio.

On appeal, Entropic's arguments turn on what it alleges is a failure by Comcast and the Board to address the interrelationship between claim 8 and limitation [1H]. Br. 23-32. Entropic alleges that Comcast did not contend, and the Board did not find, that Konstantinos discloses controlling the transmission of network management messages based on the "signal-to-noise ratio." Br. 23-28. Entropic's arguments should be rejected because they improperly attack an individual reference (Konstantinos) when the obviousness case that Comcast made in the Petition—to which Entropic had ample opportunity to respond but chose not

to—and the Board adopted was based on the Kamieniecki-Konstantinos combination. *In re Keller*, 642 F.2d 413, 426 (CCPA 1981).

#### a) Comcast Alleged, Entropic Did Not Dispute, and the Board Ultimately Concluded that the Kamieniecki-Konstantinos Combination Teaches All of Claim 8's Requirements

In its Petition, Comcast contended that "claim 8 is rendered obvious by Kamieniecki-Konstantinos." Appx156. Comcast alleged that Konstantinos discloses "monitoring various signal characteristics," including "Signal-to-Noise Ratio." Appx155 (citing Appx1127 (¶109) (Konstantinos) *and* Appx765-766 (¶209) (Lett Decl.)). An ordinarily skilled artisan would have further understood, Comcast continued, that "when Konstantinos' receiver is added to Kamieniecki's STB, these additional characteristics would be obvious to include with the signal quality information obtained by Kamieniecki's monitor 116." Appx155 (Appx765-766 (¶209) (Lett Decl.)). Doing so would have been "the simple combination of a known feature (the signal quality parameters of Konstantinos) to a known method (the signal quality monitoring of Kamieniecki) to yield predictable results (reporting signal quality information)." Appx155 (Appx765-766 (¶209) (Lett Decl.)). Comcast then referenced its showing for limitation [1H], adding that an ordinarily skilled artisan "would have understood that this [i.e., reporting 'channel presence/absence' information] would include whether a channel's error rate, noise level, or signal-to-noise ratio was outside acceptable

bounds such that the channel cannot be displayed properly." Appx155-156 (citing Appx766 (¶210) (Lett Decl.)).

Entropic did not dispute Comcast's significant showing. Appx40; *see* Appx367-397 (Patent Owner Response) *and* Appx479-498 (Sur-Reply); *see also* Br. 30 ("neither party developed additional evidence or argument after institution on claims 8 and 17"). Entropic therefore forfeited any challenge to Comcast's showing. *See, e.g.*, *IOENGINE, LLC v. Ingenico Inc.*, 100 F.4th 1395, 1402 (Fed. Cir. 2024); *see also* Appx318 (cautioning "that any arguments not raised in the response may be deemed waived").

In the Final Written Decision, the Board acknowledged Comcast's contentions for both of claim 8's requirements and their interrelationship, stating that "[Comcast] contends, as explained for limitation 1H, that Kamieniecki reports 'channel absence/presence' and that a POSITA would have understood that this would include a channel's error rate, noise level, or signal-to-noise ratio was outside acceptable bounds and could not be displayed properly." Appx44 (citing Appx155-156). The Board did not express disagreement with Comcast's allegation that it would have been obvious to report channel presence/absence based on Konstantinos's "Signal-to-Noise." Rather, the Board found that "Konstantinos's 'signal-to-noise level' has not been shown to be equivalent to the claimed 'noise levels.'" Appx44.

Entropic concedes that the Board's initial finding that "Konstantinos's 'signal-to-noise level' has not been shown to be equivalent to the claimed 'noise levels'" overlooked Comcast's contention that Konstantinos's "Signal-to-Noise" teaches claim 8's recitation of a "signal-to-noise ratio." Br. 20. Entropic likewise concedes that the Board corrected that oversight in its Rehearing Decision. Br. 20; Appx64-65. The Board reversed course because it had incorrectly found Comcast's showing insufficient on claim 8's recited limitation: "We agree with [Comcast] that we overlooked considering Konstantinos's 'Signal-to-Noise' in relation to claim 8's 'signal-to-noise ratio' and grant rehearing on this issue." Appx64 (citing Appx1127 (¶109) (Konstantinos)).

The Board did not, as Entropic alleges, "silently abandon[]" any of claim 8's requirements or "change[] its prior analytical framework." Br. 29, 31. Rather, the Board again acknowledged, without disagreement, Comcast's undisputed allegation that a signal-to-noise ratio being outside of acceptable bounds would be a basis for reporting channel absence. Appx64 (citing Appx580-582). Finding Comcast's contentions persuasive, the Board concluded that claim 8 was "unpatentable as obvious over the combination of Kamieniecki and Konstantinos." Appx65.

Entropic also claims that it was denied notice and an opportunity to be heard on rehearing. Br. 30-32. But Comcast's Rehearing Request and the subsequent

Board decision simply addressed allegations offered in Comcast's Petition. Entropic thus had notice of Comcast's allegations as far back as the Petition. Appx580-582. Entropic also had the opportunity to respond to Comcast's allegations in its Patent Owner Response—an opportunity Entropic declined despite the Board's warning that arguments not presented in the Patent Owner Response may be deemed waived. Appx318; *see* 37 C.F.R. §42.120(a) (describing the scope of a patent owner response as being responsive "to the petition and/or decision on institution"). That Entropic declined to respond after it had received notice disposes of Entropic's APA argument.

**b) Substantial Evidence Supports the Board's Findings Underlying its Obviousness Conclusion for Representative Claim 8**

The Board credited the evidence that Comcast presented in its Petition (Appx155-156) and highlighted in its Rehearing Request (Appx580-582), including:

- paragraphs 14, 22-23 of Kamieniecki, which disclose reporting "channel absence/presence" (Appx1104-1105 (cited at Appx155));
- paragraph 109 of Konstantinos, which discloses analyzing a signal for "Signal-to-Noise" (Appx1127 (cited at Appx155)); and
- paragraphs 207-211 of Mr. Lett's Declaration, where Mr. Lett opined that it would have been obvious to an ordinarily skilled artisan to add

> "Signal-to-Noise" to the characteristics obtained by Kamieniecki's monitor 116 to yield the predictable result of "reporting signal quality information" (Appx765-766 (cited at Appx155-156)).

Appx64-65.

Entropic's contrary arguments (Br. 25-28), if reached despite Entropic's forfeiture of any challenge to Comcast's obviousness case, should be rejected. As discussed, those arguments attack Konstantinos in isolation and do not address the Kamieniecki-Konstantinos combination. *Keller*, 642 F.2d at 413. Entropic also suggests, incorrectly, that the Board made inconsistent findings as to Konstantinos's bit error rate and signal-to-noise ratio. Br. 27. Contrary to Entropic's allegations, the record supports treating bit error rate and signal-to-noise ratio differently. Unlike signal-to-noise ratio, Comcast alleged that bit error rate was a species of Kamieniecki's "error count," which Kamieniecki discloses separately from the "channel presence/absence." Appx155 (citations omitted) (Petition); Appx1104-1105 (¶¶7, 14, 22) (Kamieniecki). So while it may have been obvious to report an "error count" based on the bit error rate, it was not clear from Comcast's Petition why it would have been obvious to report "channel presence/absence" based on bit error rate. *See* Appx155. The Board therefore reasonably found that bit error rate was not shown to be "the basis for controlling

transmission of Kamieniecki's 'channel absence/presence' from the receiver to the headend." Appx44.

* * *

Accordingly, Comcast and the Board addressed all of claim 8's requirements, Entropic had notice of and an opportunity to respond to Comcast's obviousness theory for claim 8 based on the Kamieniecki-Konstantinos combination, and substantial evidence supports the findings underlying the Board's conclusion that representative claim 8 would have been obvious.

## V. CONCLUSION

For the foregoing reasons, the Board's decisions determining claims 1-4, 8-13, 17, and 18 of the '826 patent unpatentable should be affirmed. Substantial evidence supports the findings underlying the Board's conclusions that representative claims 1 and 8 would have been obvious over the Kamieniecki-Konstantinos combination. The obviousness theories adopted by the Final Written Decision are rooted in Comcast's IPR Petition. Entropic's claims of error are premised on allegations that are unsupported in the record and thus should be rejected.

Respectfully submitted,

September 11, 2026

*/s/ Omar F. Amin*

AUSTIN P. MAYRON
Deputy Solicitor

ROBERT J. MCMANUS
Senior IP Legal Counsel

KEVIN K. MCNISH
Senior Counsel for Patent Law and Litigation

OMAR F. AMIN
PETER J. SAWERT
Associate Solicitors
Office of the Solicitor
U.S. Patent and Trademark Office
Mail Stop 8, P.O. Box 1450
Alexandria, Virginia 22313
omar.amin@uspto.gov
(571) 272-9035

*Attorneys for the Director of the U.S. Patent and Trademark Office*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing brief complies with the type-volume limitation in Fed. Cir. R. 32(b). The total number of words in the foregoing brief is 7,023 words, as calculated by Microsoft Word.

*/s/ Omar F. Amin*
OMAR F. AMIN
Associate Solicitor
United States Patent & Trademark Office
Mail Stop 8
P.O. Box 1450
Alexandria, Virginia 22313-1450